UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BOBBY ROBERTSON, JR.,

                   Petitioner,

    -against-                              1:03-CV-1459
                                         (LEK)

UNITED STATES OF AMERICA,

                   Respondent.

_____

## MEMORANDUM-DECISION AND ORDER

### I.    Background

On January 29, 1998, Petitioner Bobby Robertson, Jr. pled guilty to an Information charging him with violation of 21 U.S.C. § 844 for possession of approximately 22.5 grams of cocaine base. (Crim. Dkt. No. 4).[1]  Based on Petitioner's plea agreement, this Court found that he was subject to a base offense level of 28, pursuant to U.S.S.G. § 2D1.1(c)(6).  (Crim. Dkt. No. 5).  On May 26, 1998, Petitioner was sentenced to imprisonment for 112 months, followed by three years of supervised release.  Petitioner appealed his sentence to the Second Circuit.  (Crim. Dkt. No. 8).  On December 13, 1999, the Second Circuit remanded the case to this Court for an evidentiary hearing in order to determine whether the substance to which Petitioner pled guilty to possessing was crack cocaine. United States v. Robertson, 1999 WL 1212551 (2d Cir. Dec. 13, 1999) (unpublished).  This Court held evidentiary hearings on June 19, July 25, and October 17, 2000.  (Civ. Dkt. No. 11).[2]  On October 11, 2001, this Court found that the substance Petitioner pled guilty to possessing was in fact

_____

[1]  "(Crim. Dkt. No.)" refers to the docket for the underlying criminal case, 1:98-cr-00026.

[2]  "(Civ. Dkt. No.)" refers to the docket for the instant case.

crack cocaine.  (Crim. Dkt. No. 37).  Petitioner was re-sentenced to imprisonment for 105 months,

followed by three years of supervised release.  (Crim. Dkt. No. 55).  Petitioner again appealed his

sentence to the Second Circuit, challenging the sufficiency of the evidence that he possessed crack

cocaine, the chain of custody, and the constitutionality of the federal prosecution following the

dismissal of state charges.  (Civ. Dkt. No. 11).  The Second Circuit rejected his claims and affirmed

the sentence.  United States v. Robertson, 2002 WL 31401624 (2d Cir. Oct. 23, 2002)

(unpublished).

   Petitioner now moves pursuant to 28 U.S.C. § 2255 to vacate his sentence.  (Civ. Dkt. No.

1).  In Petitioner's § 2255 motion, he alleges six different grounds for vacating his sentence.  Id.

First, he received ineffective assistance of counsel by his first attorney, Renee McLaughlin, Esq.  Id.

Second, the Court has no jurisdiction.  Id.  Third, the Court erred in denying his request for a bill of

particulars.  Id.  Fourth, chain of custody was not proven.  Id.  Fifth, Petitioner did not knowingly

and intentionally accept the plea agreement.  Id.  Additionally, Petitioner argues that the Court did

not properly sentence him in accordance to his plea.  Id.  Sixth, U.S.S.G. § 3.B1.2, which allows for

a decrease in the sentence if the defendant played a minor role in the criminal activity, should have

been applied to Petitioner.  Id.

   The United States responded by filing a brief claiming that all six of Petitioner's allegations

were misplaced.  (Civ. Dkt. No. 11).  Petitioner filed a response in reply, realleging that the sentence

imposed was unconstitutional because it was in excess of the maximum penalty allowed by 21

U.S.C. § 844, and that the Court lacked subject matter jurisdiction.  (Civ. Dkt. No. 13).

II.    **Discussion**

**A. Ineffective Assistance of Counsel**

Petitioner claims that he was denied effective assistance of counsel by his first attorney, Renee McLaughlin.  (Civ. Dkt. No. 1).  He supports this claim by alleging that Ms. McLaughlin did not pursue investigation of the substance he was charged with possessing, she did not explain the language of the plea to him, and she allowed him to plea to an unconstitutional plea.  Id.

It is well-established that in order to protect the fundamental right to a fair trial, the Sixth Amendment contains a right to counsel.  Strickland v.Washington, 466 U.S. 668, 684 (1984) (citing Powell v. Alabama, 287 U.S. 45 (1932); Johnson v. Zerbst, 304 U.S. 458 (1938); and Gideon v. Wainwright, 372 U.S. 335 (1963) as examples of cases which have recognized this right).  The Supreme Court has determined that the right to counsel means the right to effective assistance of counsel.  McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970).  The Court interpreted "effective assistance of counsel" in Strickland v. Washington, finding that defendants asserting this claim must meet a two-part test.  466 U.S. at 687.  First, the defendant must prove that counsel's performance was defective.  Id.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Second, the defendant must prove that counsel's poor performance  prejudiced the defense.  Id.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.  In order to be successful on a claim of ineffective assistance of counsel, the defendant must be able to prove both parts of this test.  Id.  In assessing counsel's performance, the Strickland Court noted that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse

3

sentence." Id. at 689.

Petitioner first claims that Ms. McLaughlin did not pursue the investigation of the identity of the substance he was charged with possessing. (Civ. Dkt. No. 1). This is factually incorrect. Ms. McLaughlin did investigate the identity of the substance. She had the substance tested and moved for additional retesting by an independent laboratory. (Crim. Dkt. No. 6). The motion was denied and the substance was not retested. Id. Ms. McLaughlin's failure to make another motion for retesting, once it had already been denied, is not an example of deficient performance and did not prejudice his defense.

Petitioner further alleges that Ms. McLaughlin did not explain the terms of his plea agreement and allowed him to agree to an unconstitutional plea. (Civ. Dkt. No. 1). However, during the plea hearing, Petitioner, while under oath, affirmed his understanding of the plea through a series of questions asked by this Court. (Crim. Dkt. No. 6). When asked if he had discussed the plea agreement with his attorney, Petitioner answered in the affirmative. Id. When asked if his attorney explained the charge to him, Petitioner answered in the affirmative. Id. When asked if his attorney discussed the consequences of the plea to him, Petitioner answered in the affirmative and indicated that he understood the consequences. Id. When asked if he was satisfied with Ms. McLaughlin's performance, Petitioner answered in the affirmative. Id. Petitioner also confirmed that Ms. McLaughlin advised him of his rights in this matter and he did not wish to ask the Court any questions. Id. By his own admissions during the plea hearing, it is clear that Ms. McLaughlin did explain the nature of the plea agreement to Petitioner and furthermore, that he understood the consequences of agreeing to it. Petitioner was given numerous opportunities during the plea hearing to voice concerns regarding the plea and Ms. McLaughlin's explanation thereof. The Second

4

Circuit has stated that a "criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity and are generally treated as conclusive in the face of the defendant's later attempt to contradict them. Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) (internal citations and quotation marks omitted). Petitioner has not presented evidence to overcome this presumption. Accordingly, Petitioner cannot support his allegation that Ms. McLaughlin did not explain the plea agreement to him and claim her performance was ineffective. Since Petitioner has not shown that Ms. McLaughlin's performance was deficient and prejudiced his defense, he has failed to prove ineffective assistance of counsel under the Sixth Amendment.

**B. Jurisdiction**

Petitioner claims in his § 2255 motion that this Court lacks personal jurisdiction. (Civ. Dkt. No. 1). In his reply to the United States' motion, Petitioner also asserts that this Court lacks subject matter jurisdiction. (Civ. Dkt. No. 13). Additionally, Petitioner seems to be alleging that the federal courts lack jurisdiction over him because his case was originally filed in the state court system. (Civ. Dkt. No. 1).

Subject matter jurisdiction in federal district courts is governed by 18 U.S.C. § 3231, which states, "district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231 (1948). Petitioner has been charged with a violation of 21 U.S.C. § 841. Accordingly, this Court has subject matter jurisdiction over Petitioner's case because he was charged with an offense against the laws of the United States. See United States v. Si Lu Tian, 339 F.3d 143, 147 (2d Cir. 2003). Petitioner correctly asserts that subject matter jurisdiction can never be waived and requires correction at any

time.  See United States v. Cotton, 535 U.S. 625, 630 (2002).   However, in the present case, this

Court had subject matter jurisdiction over Petitioner and no correction is necessary.

Personal jurisdiction, unlike subject matter jurisdiction, is waivable in both civil and

criminal trials.  See United States v. Rosenberg, 195 F.2d 583, 603 (2d Cir. 1952) (citing Pon v.

United States, 168 F.2d 373 (1st Cir. 1948); United States v. Rauscher, 119 U.S. 407 (1886)).  A

defendant waives any future challenge to personal jurisdiction by appearing in court and failing to

object to the jurisdiction over his person.  See Pon, 168 F.2d at 374 (noting that it has "long been the

rule and the practice" that if the defendant does not challenge personal jurisdiction upon appearance

in court, he waives such objection).  Here, Petitioner did not raise any challenges to personal

jurisdiction when he appeared in court, thereby waiving his right to challenge it.

With his argument challenging jurisdiction, Petitioner further alleges that the transfer of his

case from county court to federal court was unconstitutional.  (Civ. Dkt. No. 1).  Petitioner's case

began in state court, where it was dismissed.  (Civ. Dkt. No. 11).  Dismissal from state court,

however, does not shield Petitioner from federal charges.  This practice is fully supported by the

doctrine of "dual sovereignty," under which "[w]hen a defendant in a single act violates the 'peace

and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct

'offences.'"  Heath v. Alabama, 474 U.S. 82, 88 (1985) (citations omitted).  It has been further

established that crimes that violate both state and federal laws are crimes that violate 'peace and

dignity.'  See United States v. Coonan, 938 F.2d 1553, 1562-63 (2d Cir. 1991), cert. denied, Kelly

v. United States, 503 U.S. 641 (1992) (holding that "an act denounced as a crime by both national

and state sovereignties is an offense against the peace and dignity of both and may be punished by

each").  Since Petitioner in this case violated both state and federal drug laws, he is subject to

prosecution at both levels of government.

### C. Bill of Particulars

Petitioner claims there was a bill of particulars violation.  (Civ. Dkt. No. 1).  In support of this claim, Petitioner discusses an unrelated matter, the use of the March 12, 1997 lab report in his indictment.  Id.

The purpose of a bill of particulars is to "provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at trial."  United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (citations omitted).  Whether or not to grant a bill of particulars lies within discretion of the district court.  United States v. Panza, 750 F.2d 1141, 1148 (2d. Cir. 1984) (citations omitted).  Here, Petitioner does not offer any support for his claim that his request for a bill of particulars was wrongly denied.  The indictment together with the discovery provided to Petitioner served the same purpose as a bill of particulars, and therefore a bill of particulars was not necessary in this case.  Additionally, on January 29, 1998, Petitioner waived his indictment and pled guilty to knowingly and intentionally possessing crack cocaine.  (Crim. Dkt. No. 6).  Upon pleading guilty, Petitioner waived any challenge to this Court's denial of a bill of particulars.  See United States v. Schoenfeld, 78 Fed. Appx. 745, 747 (2d Cir. 2003) (unpublished table decision).

Petitioner's discussion of the March 12 lab report is misplaced, and any questions regarding the identity of the substance have been decided through lengthy evidentiary hearings.  The March 12 lab report was created when this case was still in the New York State system.  (Civ. Dkt. No. 11).  Under New York State law, whether the substance is cocaine or a cocaine base is irrelevant.  See N.Y. PENAL LAW § 220.00 (Consol. 2005); N.Y. PUBLIC HEALTH LAW § 3306 Schedule II (b)(4)

7

(Consol. 2005) (listing only cocaine, not a cocaine base, as a controlled substance); N.Y. Penal

Law § 220.16(1) (Consol. 2005); see also Cassells v. Ricks, 2000 WL 1010977, at *6 (S.D.N.Y.

Jul. 21, 2000) (noting that according to New York law, "possession with intent to sell any form of

cocaine, including crack cocaine or powdered cocaine, violates Penal Law § 220.16(1)").

Therefore, the lab report simply designated the substance as cocaine.  When Petitioner's case came

to federal court, the forensic scientist who performed the tests sent a supplemental report

acknowledging that the substance was in fact a cocaine base.  (Civ. Dkt. No. 11).  This supplemental

report, along with the evidentiary hearings, is sufficient and no question remains as to the identity of

the substance Petitioner pled guilty to possessing.  Indeed, the Second Circuit, in rejecting any

further question as to the identity of the substance, noted that "Robertson goes so far as to admit in

his brief that [t]he chemical nature of the drug is beyond challenge; the expert witnesses on both

sides agree that, chemically, it is cocaine base."  United States v. Robertson, 2002 WL 31401624, at

*2 (2d Cir. Oct. 23, 2002) (unpublished).

### D.  Chain of Custody

Petitioner claims that the proper chain of custody was not shown and the substance that was

tested was not provided by him.  (Civ. Dkt. No. 1).  In support of this argument, he contends that the

testing done on the substance showed two different colors and weighting.  Id.

Federal Rule of Evidence 901 governs the requirements for the authentication of items

submitted into evidence.  Fed. R. Evid. 901.  The chain of custody is the ordinary method of

authentication for physical evidence.  United States v. Gelzer, 50 F.2d 1133, 1141 (2d Cir. 1995).

However, even if the chain of custody is not proven, the evidence is not mandatorily excluded.  See

id. (holding that "a break in the chain of custody does not necessarily result in the exclusion of

8

physical evidence").   In fact, it is well-established that in federal court, "chain of custody goes to the weight of the evidence, not its admissibility." <u>Cassells v. Ricks</u>, 2000 WL 1010977, at *7 (S.D.N.Y. Jul. 21, 2000) (citations omitted).

Despite the fact that chain of custody is not essential to the admissibility of the substance, the United States has proven the chain of custody here.  The Second Circuit has already affirmed this Court's determination "that the government satisfactorily accounted for the whereabouts of the evidence at all relevant times." <u>United States v. Robertson</u>, 2002 WL 31401624, at *2 (2d Cir. Oct. 23, 2002) (unpublished).  Petitioner supports his claim by stating that the tested substance is a different color and weight from the substance he had in his possession.  (Civ. Dkt. No. 1). However, the Southern District of New York has rejected similar claims.  <u>See</u> <u>Cassells</u>, 2000 WL 1010977 at *8.  In <u>Cassells</u>, the Court cites several examples where courts have rejected the chain of custody argument because of a different appearance or weight of the evidence.  <u>See</u> <u>id</u>. (citing <u>United States v. Rivera-Cintron</u>, 29 M.J. 757, 761 (A.C.M.R. 1989); <u>United States v. Stanley</u>, 24 F.3d 1134, 1317 (11th Cir. 1994); and <u>United States v. Limehouse</u>, 950 F.2d 501, 504 (7th Cir. 1991) where courts found the chain of custody to be unbroken even though substances had different physical appearances at trial).  Even though there might have been a change in the appearance of the evidence, that does not break the chain of custody nor does it affect the admissibility of the evidence.

### E.  Plea Agreement and Sentencing

Petitioner claims that the plea was made unwillingly, unknowingly and involuntarily.  (Civ. Dkt. No. 1).  He further alleges that the maximum sentence he should have received under the plea agreement was one year of incarceration and a $1,000 fine.  <u>Id</u>.  Additionally, he contends that

U.S.S.G. § 3B1.2 of the Sentencing Guidelines should apply to him and a downward departure should have been applied.  Id.

A plea of guilty is only constitutional if it is "voluntary" and "intelligent."  Brady v. United States, 397 U.S. 742, 747-48 (1970).  In order to be intelligent, a defendant must truly understand the nature of the charge.  Smith v. O'Grady, 312 U.S. 329, 334 (1941).  Here, there is no question that Petitioner understood the nature of the charge and willingly chose to accept it.  This Court took numerous steps during the plea allocution to ensure Petitioner voluntarily accepted the agreement and that he understood its nature and consequences.  First, a recess was taken "to make sure that the defendant is sure of what he is doing."  (Crim. Dkt. No. 6).  Second, Petitioner was advised that he was going to be asked questions "to make sure that you understand what's happening here this morning, that you understand your rights, the charges and consequences of what you're doing here."  Id.  Third, in a series of questions discussed more fully above, Petitioner affirmed the following: he had no medical condition, medication, or anything else which would affect his ability to understand the proceeding, he had gone over the charges with his counsel and discussed the nature of the charge, he understood the nature of the charge and that there was a factual basis for the guilty plea, and finally that he was advised of the potential penalties for accepting the plea.  Id.  Fourth, Petitioner was advised by this Court of his rights.  Id.  Fifth, Petitioner affirmed that he pled guilty freely and voluntarily, with a full understanding of the charge and its consequences.  Id.  Sixth, upon hearing the potential penalties explained by the Court, Petitioner still wished to plead guilty.  Id.  This Court went to great lengths to ensure Petitioner was pleading guilty in accordance with the Constitution.  Further, as noted above, a defendant's statements during his plea allocution are presumed true and considered conclusive.

Petitioner further claims that the sentence imposed, 105 months, was above the maximum penalty allowed under 21 U.S.C. § 844.  (Civ. Dkt. No. 1).  However, § 844 specifically states that "a person convicted under this subsection for the possession of a mixture or substance which contains cocaine base shall be imprisoned not less than 5 years and not more than 20 years, and fined a minimum of $1,000."  21 U.S.C. § 844 (2005).  Since Petitioner was convicted under this section for possessing a cocaine base, his sentence of 105 months clearly falls under the maximum penalty.

Lastly, Petitioner claims that the Court should have exercised its discretion and given him a downward departure pursuant to U.S.S.G. § 3B1.2.  This section of the Sentencing Guidelines provides " a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."  U.S.S.G. § 3B1.2., comment (n.3).  However, any departure that is taken based on the Guidelines is only reviewable for clear error.  United States v. Gomez, 31 F.3d 28, 31 (2d Cir. 1994).  Since the departure is reviewable for clear error, it is the burden of Petitioner to prove, by a preponderance of the evidence, that a departure should have been granted.  Gomez, 31 F.3d at 31.

Petitioner has not shown any evidence to prove that he was a minimal or minor participant in the criminal activity.  Additionally, since he was in possession of cocaine and the crime to which he pled guilty was "possession of cocaine, " he was more than a minimal or minor participant in the criminal activity—he was the only participant in that crime.

## III.    Conclusion

Based on the foregoing discussion, it is hereby

ORDERED, that Petitioner's motion to vacate, set aside or alter his sentence is **DENIED**;

11

and it is further

ORDERED, that Petitioner's § 2255 motion is **DISMISSED** in its entirety; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.

DATED:  May 04, 2005
        Albany, New York

Lawrence E. Kahn
U.S. District Judge